**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Northern Division)**

| | | |
|---|---|---|
| **CATHLEEN J. DIEHL,** | * | |
| **and** | * | |
| **BRIAN A. DIEHL,** | * | **Civil No. WDQ-02-397** |
| **Plaintiffs,** | * | |
| **v.** | * | |
| **THE UNITED STATES OF AMERICA,** | * | |
| **Defendant.** | * | |

*    *    *    *    *    *    *    *    *    *    *    *

**PROPOSED JOINT PRETRIAL ORDER**

The parties, by and through their respective undersigned counsel, hereby submit this Joint

Pretrial Statement pursuant to the Court's Scheduling Order, and the Local Rules of the United

States District Court for the District of Maryland, Rule 106.

1.    **PARTIES AND COUNSEL**:

   **Plaintiffs**:

      Cathleen J. Diehl
      Brian A. Diehl

   **Plaintiffs' Counsel**:

      Zev T. Gershon
      Robin R. Smith
      Janet, Willoughby, Gershon,
        Getz & Jenner, LLC
      Woodholme Center - Suite 320

> 1829 Reisterstown Road
> Baltimore, Maryland 21208
> 410-653-3200

**Defendant**:

> United States of America

**Defendant's Counsel**:

> Nadira Clarke
> Kristine L. Sendek-Smith
> Larry D. Adams
> Assistant United States Attorneys
> 6625 United States Courthouse
> 101 W. Lombard Street
> Baltimore, MD 21201
> 410-209-4800

2.      **BRIEF STATEMENT OF FACTS**:

A.      **Plaintiffs' Statement of Facts**:

Plaintiffs propose to prove the following facts in support of their legal theories of negligence:

This case involves the delayed diagnosis of early stage breast cancer that would have had an excellent prognosis if detected and treated in a timely manner. Because of the nearly 15-month delay, the early stage cancer that this 34 year-old wife and mother of five had in January 1998, progressed to the point where she is expected to die from the disease.

On January 20, 1998, an employee of the Federal Government, Samir Farra, M.D., a radiologist, misread the mammogram of Plaintiff, Cathleen Diehl, as benign. Several months later,

Mrs. Diehl was erroneously instructed to obtain a follow-up evaluation in one years' time.[1] Pursuant to the standard of care that governed Dr. Farra's care, the mammogram should have been read as indeterminate and Mrs. Diehl should have been referred for an immediate biopsy whereupon her cancer would have been detected and treated.

While Dr. Farra found clustered calcifications on his review of the mammogram, he failed to appreciate their significance and erroneously interpreted the mammogram as benign.

Instead, the mammogram should have been interpreted as indeterminate, and therefore required immediate further work-up to more conclusively determine whether those calcifications were cancerous.  A biopsy was particularly necessary in this case because of Mrs. Diehl's disconcerting family history of breast cancer, about which Dr. Farra was well aware, and the absence of previous mammogram films for comparison.[2]

To a reasonable degree of medical certainty, the biopsy would have revealed a Stage I cancer, which would have been curable with treatment.

The misinterpreted mammogram which was performed for screening purposes,  revealed multiple calcifications in the lateral quadrant of the left breast.  The breast cancer that was ultimately detected in May 1999, was in the same location as the calcifications found in the earlier

---

[1] Mrs. Diehl was seen at Winn Army Community Hospital in Ft. Stewart, Georgia where her husband, who is a Sergeant in the Army, was stationed at the time.

[2] Mrs. Diehl's sister and grandmother both developed breast cancer.  Her sister died of the disease at age 35.  Comparing prior films helps to determine whether the current findings are stable, and thus less of a concern, or whether they represent a change in the tissue.

mammogram.  The biopsy taken at that time revealed the presence of Stage III cancer.[3]  (The

cancer had metastasized to two lymph nodes and the prognosis was and remains ominous.)

Had a biopsy been performed in response to the initial mammogram, to a reasonable degree

of medical certainty, Mrs. Diehl's breast cancer would have been detected at Stage I, i.e. before

any metastasis, and Mrs. Diehl's prognosis would have been favorable.

As a result of the violations of the standard of care by Dr. Farra, Mrs. Diehl has suffered

and will continue to suffer great pain and mental anguish and will likely die prematurely (probably

within approximately the next year).

Because of the progression of Mrs. Diehl's cancer, she had no choice but to undergo

extensive and debilitating radiation and chemotherapy which she otherwise would not have

needed.

**B**.        **Defendant's Statement of Facts**:

In 1998, Staff Sergeant Brian A. Diehl was stationed at Ft. Stewart, Georgia, where he

resided with his dependent wife, Cathleen Diehl, and his five children.  On January 7, 1998, Mrs.

Diehl presented to Tuttle Army Health Clinic for an annual physical with Physician's Assistant

Brian Cannady.[4]  During the examination Mrs. Diehl complained of non-specific pain in her left

---

[3]

 A follow-up mammogram and subsequent biopsy in approximately March of 1999 would
have revealed metastatic cancer.  Therefore, detection at that point would have resulted in
the same tragic situation for Mrs. Diehl and her family.  (No contention has been made
that Mrs. Diehl's failure to obtain a follow-up mammogram in March, 1999, affected the
nature and extent of Mrs. Diehl's injuries.)

[4]Tuttle Army Health Clinic is located at Hunter Army Airfield, approximately 50 miles
from Ft. Stewart.

breast, and possible nipple discharge.   Mr. Cannady performed a manual breast exam which

revealed no palpable masses or other suspicious findings.  At Mrs. Diehl's request, and in light of

her family history (her sister had recently been diagnosed with breast cancer at age 32), Mr.

Cannady scheduled her for a screening mammogram.

On January 20, 1998, Mrs. Diehl presented to Winn Army Community Hospital for her

mammogram.  Radiologist Dr. Samir Farra interpreted her mammogram and the results of the

mammogram were set forth in a mammographic report dated January 20, 1998.  The report noted

Mrs. Diehl's relevant health history, including her family history of breast cancer, and recent

completion of a cycle of breast feeding.  It also documented a finding of "homogenous benign

appearing calcifications" in the lateral quadrant of the left breast.  No follow-up mammogram was

recommended.

In light of Mrs. Diehl's family history, Dr. Farra requested that his finding be peer

reviewed by the other Radiologists in the Department.  The peer review was completed several

days later, and on January 27, 1998, a revised mammographic report was generated which

recommended that Mrs. Diehl submit to a follow-up mammogram within one year to insure the

stability of the calcifications evidenced on the film of her left breast.  Mrs. Diehl did not return for

a follow-up mammogram until fourteen months later.

In August of 1998, Sgt. Diehl was rotated to Schofield Barracks, Hawaii.  Mrs. Diehl and

her children moved to Hawaii with him.  While in Hawaii, Mrs. Diehl continued to experience

discharge and pain in her left breast.  Despite the presence of such symptoms, Mrs. Diehl did not

seek medical care.  In fact, only upon the insistence of her husband did she finally schedule an

appointment at Tripler Army Medical Center ("Tripler").

On May 6, 1999, Mrs. Diehl presented to Tripler complaining of a lump in her left breast. Upon examination, it was revealed that she had a hard mass measuring 2.5x3.0 cm located in the upper outer quadrant of her left breast. A mammogram performed on May 11, 1999, confirmed the presence of a 4 cm, ill-defined lobulated mass suspicious for malignancy. A fine needle aspiration biopsy was performed on May 14, 1999, diagnosing Mrs. Diehl with cancer in the left breast and axillary lymph nodes. The diagnosis was confirmed by the results of a subsequent core needle biopsy which revealed well to moderately differentiated infiltrating ductal carcinoma.

From May, 1999, through August, 1999, Mrs. Diehl underwent neoadjuvant (preoperative) chemotherapy consisting of four cycles of Adriamycin and Cytoxan to shrink the tumor and lymph nodes. She also received genetic counseling and learned that she was the carrier of the BRCA breast cancer gene mutation.

On August 27, 1999, Mrs. Diehl underwent a right simple prophylactic mastectomy and a left modified radical mastectomy. She chose to remove her right breast because of her genetic predisposition to developing breast cancer. The post-operative pathology report confirmed a residual moderately differentiated cancer measuring 1.0 cm in greatest diameter. It also revealed that 2 of 17 excised lymph nodes contained cancer. Mrs. Diehl was discharged from Tripler on August 31, 1999. Thereafter, she received additional chemotherapy consisting of four cycles of Taxol. Her chemotherapy treatments were completed on November 22, 1999, and she then received radiation treatments to her chest wall through January 18, 2000.

In February 2000, at Sgt. Diehl's request, he was transferred with his family to Ft. Meade,

Maryland.  Mrs. Diehl received follow-up care, including breast reconstruction, at Walter Reed Army Medical Center and Kimbrough Health Clinic in the Washington metropolitan area.

In February of 2002, Sgt. Diehl was transferred to Korea, and Mrs. Diehl and the children moved to Pennsylvania.  Currently, Sgt. Diehl, Mrs. Diehl and the children are located in San Angelo, Texas, while Sgt. Diehl is stationed at Goodfellow Air Force Base.

As of this date, Mrs. Diehl has not experienced a recurrence of her disease.  Mrs. Diehl has not been under the care of a doctor since she was treated at Walter Reed Army Medical Center and has not received any screenings or tests to detect the presence of cancer.

**3.**   **COUNTERCLAIMS, CROSS-CLAIMS, THIRD-PARTY CLAIMS**:

None.

**4.**   **AMENDMENTS TO THE PLEADINGS:**

None.

**5.**   **ISSUES IN THE PLEADINGS TO BE ABANDONED:**

None.

**6.**   **STIPULATIONS OF FACT:**

**A.**   **Agreed Upon Stipulations:**

(1)   Dr. Farra was and is an agent, servant and/or employee of the United States of America acting within the scope of his employment when he cared for Mrs. Diehl.

(2)   Cathleen Diehl's medical care has been paid pay through military health insurance.

(3)    The parties stipulate to the use of enlargements of documents at trial,

provided that opposing counsel is given the opportunity to see them no later

than three (3) days prior to the first date of trial.

**B.    Plaintiffs:**

Plaintiffs propose the following stipulations of fact:

(1)    Authenticity of documents including the mammogram films.

(2)    Records which appear on their face to be kept in the ordinary course of

business are in fact so kept.

(3)    That all documents not created in anticipation of litigation, exchanged

between the parties, are authentic.

(4)    That all medical treatment received by Mrs. Diehl was necessary to treat her

cancer.

**C.    Defendant:**

Defendant agrees to stipulate to the authenticity and admissibility of all medical records,

including mammogram films.  Defendant does not agree to the other proposed stipulations.

**7.    DETAILS OF DAMAGES:**

**A.    Plaintiffs:**

As a direct and proximate result of the Defendant's negligence, Mrs. Diehl has suffered

and continues to suffer severe conscious pain and suffering including fear of impending death, and

Mr. Diehl has suffered and continues to suffer a loss of consortium. This case is being tried under

Georgia law so there is no cap on the amount that can be awarded for non-economic damages.

-8-

**B.    Defendant:**

Under Georgia law, damages asserted by a plaintiff must be able to be calculated with a reasonable degree of certainty.  Douglas v. Rinker, 216 S.E.2d 629 (1975).  Georgia law recognizes consortium claims asserted by the husband.  Smith v. Vencare, Inc. 519 S.E.2d 735 (1999).  The claim, however, is entirely dependent on the wife successfully establishing a right to recover.  Bramblett v. Earl Smith Floors, Inc., 488 S.E. 2d 766 (1997); Lovelace v. Figure Salon, Inc., 345 S.E.2d 139 (1986).  A spouse may not recover damages for the other spouse's physical injuries and attendant pain and suffering.  Community Gas Co. v. Williams, 73 S.E.2d 119 (1952). Nor can the period of recovery exceed the couples' joint lives together.  Martin v. Gurley, 40 S.E.2d 787 (1946).

Unlike Maryland, Georgia does not adhere to the common law principle of contributory negligence.  Instead, Georgia follows the comparative negligence doctrine, which merely limits the amount of recovery instead of completely barring it.  Lassiter v. Poss, 70 S.E.2d 411 (1952). Under Georgia's comparative negligence doctrine, a plaintiff whose negligence is less than that of the defendant will not be denied recovery although his damages are diminished in proportion to the degree of fault attributable to him.  Where the negligence of the plaintiff and the defendant are equal, or the negligence of the plaintiff is more than that of the defendant, the plaintiff can not recover.  Bridges Farms v. Blue, 480 S.E.2d 598 (1997) (citations and punctuation omitted.)

Georgia law also requires a 5 % discount rate to reduce future earnings, annuity, or other amounts to present value.  Ga. Code Ann. § 51-12-13.

There are several factors that impact that an assessment of potential damages in this case. The most obvious is that the Government did not cause Mrs. Diehl's cancer. A second factor is the stage or development of Mrs. Diehl's cancer in January 1998, and the change in her prognosis during the interval of time between her first mammogram and her diagnosis in May, 1999.

There is no data to definitively establish the extent of Mrs. Diehl's cancer in January 1998, and in young women with dense breast tissue, mammograms will often fail to reveal the presence of a tumor. However, based on the advanced stage of Mrs. Diehl's cancer at the time of her bilateral mastectomy in August 1999, it is entirely possible, if not likely, that she already had infiltrating ductal carcinoma (cancer which requires a mastectomy, chemotherapy, and carries a ten year survival rate of approximately 60%) at the time of her first mammogram.

Moreover, Mrs. Diehl is the carrier of the inherited BRCA breast cancer gene mutation. Carriers of the BRCA marker have a significantly higher risk of developing breast cancer then the rest of the population. For instance, the normal survival rate for an individual with stage 1 breast cancer can be as high as 90%. If that individual carried the BRCA mutation, the survival rate would lower to 63%. Mrs. Diehl's sister died of breast cancer at age 35. Her aunt, grandmother, and paternal grandfather suffered from the disease as well. Stage for stage, as a carrier of the BRCA marker, she will fare far worse.

Finally, Mrs. Diehl did not follow up with medical care until 14 months after her mammogram in January 1998. Although she was informed to return if she noticed any changes in her breasts, or at the latest, within one year of the mammogram, she did not schedule an appointment at Tripler until the changes she felt in her breast were noticeable to her husband and

-10-

painful.

Mrs. Diehl is a young woman with a lethal gene mutation and a very aggressive cancer, who, despite the presence of alarming symptoms and pleas by her husband, inexplicably delayed seeking medical care.  Plaintiffs' challenge at trial will be to establish that irrespective of such risk factors, the Government's failure to timely identify the presence of her breast cancer was the proximate cause of the significant reduction in her life expectancy.  See Richmond County Hospital v. Dickerson, 356 S.E. 548 (1987) ("Proximate cause is not eliminated by merely establishing by expert opinion that the patient had less than fifty percent chance of survival had the negligence not occurred . . . [i]f death was inevitable regardless of treatment, lack of treatment would of course not be the proximate cause of death.").

Addressing pain and suffering, regardless of the stage of Mrs. Diehl's breast cancer in January 1998, she would have undergone a bilateral mastectomy (both breasts) and chemotherapy. This decision would have been based on her age, the aggressive nature of her cancer, and her genetic predisposition.

**8.   EXHIBITS:**

The parties have agreed upon a joint medical record exhibit as follows:

**JOINT EXHIBITS OF MEDICAL RECORDS**

| EXHIBIT | BATES NUMBERS | IDENTIFICATION | ADMITTED | DOCUMENT DESCRIPTION |
|---|---|---|---|---|
| | | | | **WINN ARMY COMMUNITY HOSPITAL** |
| 1 | 000001 | | | Clinic Appointment Record |
| 2 | 000002 | | | Clinic Physician Records |
| 3 | 000003 | | | Mammogram Questionnaire |
| 4 | 000004-000005 | | | Mammogram Report/Addendum |
| 5 | 000006 | | | Mammogram Films |
| 6 | 000007 | | | Letter Reporting Mammogram |
| 7 | 000008 | | | Mammography Report Print-Out |
| | | | | **TRIPLER COMMUNITY HOSPITAL** |
| 8 | 000009-000010 | | | Initial Family Medicine Record |
| 9 | 000011-000014 | | | Mammogram Report |
| 10 | 000015 | | | Mammogram Films |
| 11 | 000016-000017 | | | General Surgery Consult |
| 12 | 000018-000019 | | | Oncology Consult |
| | | | | **Radiation-Oncology/Radiology Records** |
| 13 | 000020 | | | Consult |
| 14 | 000021-000023 | | | New Patient Consult |
| 15 | 000024 | | | Treatment Record |
| 16 | 000025 | | | Chest X-Ray |
| 17 | 000026-000027 | | | Bone Scan |

| EXHIBIT | BATES NUMBERS | IDENTIFICATION | ADMITTED | DOCUMENT DESCRIPTION |
|---|---|---|---|---|
| 18 | 000028-000030 | | | Rt. Femur Scans |
| 19 | 000031-000032 | | | CT Abdomen & Pelvis |
| 20 | 000033-000036 | | | Breast MRIs |
| 21 | 000037-000038 | | | Ultrasound Pelvis |
| 22 | 000039-000040 | | | Right Simulation Complexes |
| 23 | 000041-000063 | | | Right Treatment Summary |
| 24 | 000064-000065 | | | Follow-up |
| 25 | 000066 | | | Bone Scan-Whole Body |
| | | | | **Oncology Clinic Records** |
| 26 | 000067-000100 | | | Physician Notes |
| 27 | 000101-000120 | | | Nurse Notes |
| 28 | 000121-000137 | | | Chemotherapy Clinic Records |
| | | | | **General Surgery Clinic Records** |
| 29 | 000138-000141 | | | Physician Notes |
| 30 | 000142-000145 | | | Registration |
| 31 | 000146-000148 | | | Discharge Summary |
| 32 | 000149 | | | History & Physical |
| 33 | 000150-000152 | | | Operative Report |
| 34 | 000153-000162 | | | Pathology Reports |
| 35 | 000163-000171 | | | Progress Notes |
| 36 | 000172-000220 | | | Lab Reports |
| 37 | 000221-000225 | | | Tumor Registry |
| 38 | 000226-000231 | | | Cancer Risk Counseling |

| EXHIBIT | BATES NUMBERS | IDENTIFICATION | ADMITTED | DOCUMENT DESCRIPTION |
|---|---|---|---|---|
|  |  |  |  | **WALTER REED ARMY HOSPITAL** |
| **39** | 000232-000240 |  |  | Physician Medical Records |
|  |  |  |  | **KIMBROUGH ARMY HOSPITAL** |
| **40** | 000241-000244 |  |  | Physician Medical Records |
| **41** | 000245-000246 |  |  | Operative Report |

Furthermore, each party will also separately mark and introduce the curriculum vitae (CV) for each of their respective expert witnesses.

A.    **Plaintiffs**:

In addition to the above exhibits, Plaintiffs further list the following:

1.    All non-objectionable exhibits noted by Defendant or other parties in this matter.

2.    Plaintiffs reserve the right to amend, delete and/or supplement this list should the ends of justice so require.

3.    Plaintiffs object to Defendant's use of any documentation as an exhibit where said documentation was not produced by the Defendant prior to the close of discovery.

4.    Plaintiffs reserve the right to use medical models at trial.  Plaintiffs will notify Defendant of such models three (3) days in advance of the first date of trial.

5.    Plaintiffs reserve the right to use tables and summaries at trial.  Plaintiffs will notify Defendant of such tables and summaries three (3) days in advance of the first date of trial.

-14-

**B.**    **Defendant**:

In addition to the above exhibits, Defendant further lists the following:

1.    All non-objectionable exhibits noted by Plaintiffs.

2.    Defendant reserves the right to amend, delete and/or supplement this list should the ends of justice so require.

3.    Defendant reserves the right to use medical models, tables and summaries at trial. Defendant will notify Plaintiffs of such illustrative exhibits three (3) days in advance of the first date of trial.

**9.**    **FACT WITNESSES**:

**A.**    **Plaintiffs**:

(1)    Expected to be presented:

　　　a.    Cathleen J. Diehl
　　　　　802 Stonewall Drive
　　　　　San Angelo, Texas  97695

　　　b.    Brian A. Diehl
　　　　　802 Stonewall Drive
　　　　　San Angelo, Texas  97695

　　　c.    Samir Farra, M.D.
　　　　　Winn Army Community Hospital
　　　　　Ft. Stewart, Georgia

　　　d.    Byron Cannaday, P.A.
　　　　　Winn Army Community Hosptial
　　　　　Ft. Stewart Georgia

(2)    To be called if the need arises:

　　　a.    All witnesses listed by the Defendant.

-15-

b.      All witnesses listed in Defendant's expert statement.

c.      All persons necessary for rebuttal or impeachment, who need not be identified in this Pretrial Order.

d.      All persons identified in the medical and health care records for Plaintiffs.

e.      Corporate designees of the Defendant to prove the business record status and authenticity of documents listed in Plaintiffs' list of exhibits, if either is questioned by the Defendant.

f.      Custodians of records will be called only if Defendant's counsel continues to refuse to stipulate to the authenticity of hospital and medical records.

g.      Hospital administrators will be called **only** if Defendant's counsel continues to refuse to stipulate to the fairness and reasonableness of the hospital and medical bills.

h.      Any record custodian to prove authenticity and business record status of other documents listed in Plaintiffs' list of exhibits, if either is questioned by the Defendant.

**B.**    <u>**Defendant**</u>**:**

(1)    Samir Farra, M.D.
Winn Army Community Hospital
Ft. Stewart, Georgia

(2)    Byron Cannaday, P.A.
Winn Army Community Hosptial
Ft. Stewart Georgia

(3)    Any impeachment witnesses if necessary

(4)    Defendant also reserves the right to call any witness listed by Plaintiffs

10.    **EXPERT WITNESSES:**

    A.    **Plaintiffs:**

        (1)    Ian M. Lande, M.D. (Radiologist)

        (2)    G. Peter Pushkas, M.D. (Oncologist)

        (3)    David Befeler, M.D. (Surgeon)

        (4)    Any expert named by Defendant

        (5)    Any rebuttal experts

    B.    **Defendant:**

        (1)    Judy M. Destouet, M.D. (Radiologist)

        (2)    Edward J. Lee, M.D. (Oncologist)

        (3)    Neil B. Friedman, M.D. (Surgeon)

        (4)    Rick R. Gaskins, MBA, CPA (Economist)

        (5)    Defendant reserves the right to call any expert witness listed by Plaintiffs

        (6)    Defendant also reserves the right to call any rebuttal witnesses although not specifically identified now

11.    **EXCERPTS OF TESTIMONY:**

    A.    **Plaintiffs:**

    **Samir Farra, M.D.**

    Page 19, lines 8-25
    Page 20, lines 1-23
    Page 21, lines 12-13
    Page 37, lines 4-9
    Page 38, lines 23-25
    Page 39, 1-5. 19-25

Page 40, lines 2-4
Page 45, lines 16-23
Page 47, lines 6-11
Page 50, lines 14-23
Page 52, lines 10-18
Page 69, lines 18-21
Page 70, lines 17-25
Page 71, lines 1-13
Page 76, lines 23-25
Page 77, lines1-77
Page 78, lines 2-25
Page 79, lines 1-25
Page 80, line 1
Page 84, lines 19-25
Page 85, lines 1-5
Page 87, lines 12-25
Page 88, lines 1-7
Page 91, lines 8-13
Page 97, lines 15-22
Page 98, lines 14-25
Page 109, lines 5-10
Page 110, lines 3-5
Page 111, lines 19-25
Page 112, line 1
Page 115, lines 15-25
Page 116, line 1

**Byron Cannaday, P.A.**

Page 30, lines 4-12, 18-24
Page 31, lines 6-12
Page 33, lines 7-17
Page 35, lines 6-14
Page 36, lines 24-25
Page 37, lines 1-14

Plaintiffs reserve the right to supplement this designation no later than three (3) days in advance of the first date of trial.  Plaintiffs also reserve the right to designate excerpts of deposition testimony from Defendant's experts if they do not appear live at trial.  Such designation will be

-18-

provided as soon as Plaintiffs are notified that Defendant's expert will not appear at trial.

**B.** **Defendant:**

Defendant opposes Plaintiffs' effort to designate portions deposition testimony of fact witnesses Farra and Cannaday because they will be available to testify at trial.

Defendant reserves the right to use any portion of the deposition transcripts of Plaintiffs' experts if they do not appear live at trial.  Such designation will be provided as soon as Defendant is notified that Plaintiffs' expert will not appear at trial.

**12.**   **PENDING MOTIONS:**

None.

Respectfully submitted,

JANET, WILLOUGHBY, GERSHON,
  GETZ & JENNER, LLC
1829 Reisterstown Road
Woodholme Center - Suite 320
Baltimore, Maryland  21208
410-653-3200


By: _____/s/_____
      Robin R. Smith

Attorneys for the Plaintiffs


and

THOMAS M. DIBIAGIO
UNITED STATES ATTORNEY

By: _____/s/_____
      Nadira Clarke
      Kristine L. Sendek-Smith
      Larry D. Adams
      Assistant United States Attorneys
      6625 United States Courthouse
      101 West Lombard Street
      Baltimore, Maryland 21201-2692
      410-209-4800

      Attorneys for Defendant